# CHARLESTON

## St. Mary's v. Hope Gas Company.

### Submitted June 15, 1912.  Decided October 8, 1912.

1. Gas—*Charges—Injunctions—Parties.*

   A municipal corporation may in its name, suing for itself as a corporation and in behalf of its residents, maintain an injunction suit to restrain an incorporated company furnishing, under a franchise granted by the municipality, natural gas for public consumption in the town or city, from excessive unlawful rates for gas.  (p. 78).

2. Same—*Gas Companies—Franchises—Limitations of Rates— Validity.*

   A provision in a municipal ordinance granting a franchise to erect and operate works to furnish natural gas for consumption in the town or city may contain fixed rates or charges for gas, and such limitation is valid, and when accepted by the grantee is a contract binding the grantee of such franchise.  (p. 78).

3. Same—*Gas Companies—Regulation—Power of Municipality.*

   In the absence of a delegation thereof by the Legislature, express or necessarily implied, a city or town has no power to regulate rates for natural gas furnished by a person or corporation for public consumption in such city or town, otherwise than by contract with such person or corporation, by the terms of the grant of franchise.  (p. 79).

4. Same—*Gas Companies—Charges.*

   A franchise is granted by a town to a corporation to occupy streets with pipes to convey gas for public consumption, authorizing specific rates of charges per fire. Later the gas company changes its charge from specific rates to a charge by meter of

twenty cents per 1,000 cubic feet of gas.  The town by injunction suit contested this change and charge; but it was denied relief and its bill dismissed.  For thirteen years the company furnished the public with gas by meter at the twenty cent rate, the town silently acquiescing.  Then the gas company increased its rate to twenty-two cents per 1,000 feet by meter.  Later on the town passed a general ordinance allowing those furnishing gas to charge a rate by meter of twenty cents per 1,000 feet of gas, and prohibiting higher charges.  Under these facts the gas company is limited to such twenty cent charge, and cannot increase it without consent of the town.  (p. 80).

Appeal from Circuit Court, Pleasants County.

Bill in equity by the City of St. Mary's against the Hope Natural Gas Company.  From a decree for plaintiff, defendant appeals.

*Affirmed.*

*A. B. Fleming, John F. Barron, A. D. Follettout, C. Powell* and *Kemble White,* for appellant.

*G. D. Smith, Clyde B. Johnson* and *Ross Wells,* for appellee.

Brannon, President:

In the year 1893 the town of St. Mary's (now by statute a city) granted by two ordinances, one to the Barnsdall, the other to Mallery, franchises to operate plants to furnish natural gas for consumption in that town.  Barnsdall and Mallery accepted these grants and established plants or works under them, and furnished gas to the town.  These grants are identical in character.  By change of ownership The River Gas Company became owner of both plants and operated them until 1910, when ownership was changed to The Hope Natural Gas Company.  These franchise grants fixed for different kinds of fires specific rates per fire called "flat rates."  Such rates prevailed until 1898, then the River Gas Company changed to charge by meter, making the rate twenty cents per 1,000 cubic feet.  The town brought in 1897 an injunction suit against the gas company to enjoin it from collecting by such meter rate, which resulted in a dcree that the town was not entitled to any relief and dismissing its bill.  For about thirteen years the River Gas Company and the Hope Gas Company furnished gas by the 20

cent meter rate; but in July, 1911, it increased the meter rate from 20 to 22 cents per 1,000 cubic feet. Supposably to resist this change, on 31st August, 1911, the city council passed an ordinance providing that any person or corporation supplying gas to the city should charge 20 cents per 1,000 feet by meter, and prohibiting any greater charge. In September, 1912, the city brought suit to enjoin the Hope Gas Company from collecting gas charges at a greater rate than 20 cents per 1,000 feet. The case was heard on bill, demurrer to it, answer and affidavits, and the court made a decree overruling a motion made by the gas company to dissolve the injunction, from which decree or order the gas company appeals.

It was assigned in the demurrer that the city cannot maintain this bill for itself and its residents, and argument is made by the city on this point. We cannot say that each resident must sue for himself, making multiplicity of suits. Clearly the city as a corporate entity may sue for itself alone, or in its name in behalf of its residents, to vindicate the public right and prevent the imposition of illegal rates. *St. Mary's* v. *Woods,* 67 W. Va. 110; *Gas Co.* v. *Muncie,* 10 Munic. Cases 137, 160 Ind. 97; *Trustees* v. *Comar,* 27 Am. Dec. 80; Pom. Eq., sec. 243.

For the Hope Gas Company it is contended that the provision in the franchise ordinances fixing flat rates per fire is void, on the ground that without legislative grant of power to do so a municipality cannot prescribe rates for corporations performing public service. Grant this. But these franchises are not municipal statutes fixing rates generally, applicable to all, like a general law passed by the legislature; but they are special grants of franchise made by the town to Barnsdall and Mallery, at their instance; grants offered them and accepted by them. They are contracts binding both the town and these grantees. We see no reason why a town may not make a contract to accomplish a function with which it is charged or empowered, binding it and the other party. He accepting is plainly bound, and cannot say the town's act is void. Opinion of Judge Poffenbarger in *Bluefield Water Co.* v. *Bluefield,* p. 8 of 69 W. Va., citing *Railroad Co.* v. *Triadelphia,* 58 W. Va. 487, and *Clarksburg Electric Co.* v. *Clarksburg,* 47 W. Va. 739. Having

accepted the grant the grantee accepted all its terms, and cannot deny the town's power to fix rates by contract.

Code ch. 147 gives a town the power "to erect or authorize or prohibit the erection of gas works, electric light or water works." It would seem to require no argument to sustain the proposition that in exercising its function under this statute the council may impose conditions and rates in the franchise. *Zanesville* v. *Gaslight Co.,* 47 Ohio St. 1; *Muncie* v. *Gas Co.,* 160 Ind. 97; *Beerth* v. *Detroit,* 152 Mich. 654. So we hold that the provision in the franchise limiting rates of charge per fire is valid.

Do the specific or flat rates of so much per fire yet prevail? They do not. The gas company does not so claim, does not propose to go by them, is not doing so. Nor does the city seek to enforce these rates. The company has been charging by meter rates at twenty cents per 1,000 cubic feet of gas consumed. It proposes to increase to twenty-two cents per 1,000 feet, and the city opposes such increase and seeks to compel the gas company to adhere to the meter system at twenty cents. So, I do not see that the clause of the franchise fixing specific or flat rates per fire is material.

After the grantees of said franchise and their aliences or assignees had for years been operating by the flat rates fixed by the franchise ordinances, The River Company proposed to abandon that flat rate, and charge by meter at twenty cents per 1,000 feet consumed, and in December, 1897, the town brought a suit against The River Gas Company to enjoin it from collecting by meter rate and compel it to collect by the flat rates per fire fixed by the franchise. This suit ended in a decree declaring that the town was not entitled to the relief which it sought, and dismissing its bill. Thus it was decreed and established that the gas company had not without right abandoned the flat rate fixed by the ordinances; that it was not binding, and that the gas company could lawfully charge by the meter system. For some thirteen years after this decree the River Gas Company, the Mountain State Gas Co., its assignee, and its assignee, the Hope Natural Gas Company furnished gas by the meter at twenty cents, when the Hope Gas Company increased its meter rate to twenty-two cents per 1,000 feet; and to prevent

the increase the council of St. Mary's, August 31, 1911, passed an ordinance fixing a rate of twenty cents per 1,000 feet chargeable by any person or corporation furnishing gas, prohibiting any greater charge under penalty of fine or imprisonment. After the passage of this ordinance the city of St. Mary's filed this bill to enforce, against the Hope Natural Gas Company the twenty cent rate, and enjoin it from charging the meter charge of twenty-two cents, and it was so decreed by overruling a motion to dissolve the injunction.

Here we have the question, Is the ordinance valid? It is useless to give authority for the proposition that a municipal corporation can do no act not granted power expressly or by necessary implication. *Judy* v. *Lashley,* 50 W. Va. 628. It is a branch of government exercising such power as the Legislature has conferred upon it; it can make laws by municipal statute to effectuate its functions, only if the legislature has given it that power. Fixing rates of charge by public service corporations is essentially legislative action and as held in *Bluefield Water Co.* v. *City of Bluefield,* 69 W. Va. 1: "In the absence of a delegation thereof by the legislature, express or necessarily implied, a municipal corporation has no power to regulate or control rates for public service, such as furnishing water, gas, electricity, or the terms and conditions of contracts thereof, otherwise than by contract with the corporation or person rendering such service." Counsel in this case argues that that point is *obiter.* The question was whether an ordinance fixing rates was valid in law, and this involved whether a town could lawfully pass it; that question was squarely involved. Why is it *obiter?* The point is moreover said not to be sound law, and we are asked to disregard it at the behest of a necessity, in these latter days especially, of giving municipalities power to regulate such rates. The legislature alone can do this. This Court cannot disregard a former holding conformable to legal principle and upheld by plentiful authority. *City of St. Louis* v. *Bell Tel Co.,* 9 Am. St. R. 370; *Griffin* v. *Goldsbere,* 41 L. R. A., p. 242. A statute giving cities power to provide for lighting streets, "subject to such regulations as any such city or village may by ordinaance impose," does not delegate to cities or villages power to regulate prices which a gas company may charge.

*Mills* v. *Chicago,* 127 Fed. 731.  The price at which natural gas shall be furnished cannot be regulated by ordinance under a general power to provide reasonable regulations for the safe supply, distribution and consumption of gas.  *Louisville* v. *State,* 21 L. R. A., p. 734.  So holds *Noble* v. *Nobleville Gas Co.,* 157 Ind. 162, 60 N. E. 1032, and *Richmond* v. *Richmond,* 168 Ind. 82.  See *In re Pryer,* 29 L. R. A. 398; *Knoxville* v. *Water Co.,* 212 U. S., p. 8; *Tacoma Co.* v. *Tacoma,* 44 Pacific 55; *Wisconson Co.* v. *Sheboygan,* N. W. 86; *South Mo Alster Tel. Co.* v. *State,* 106 Pac. 962.  The power to provide for general welfare does not give power to fix rates.  *Shrieder* v. *Scranton Co.,* 29 Pa. Sup. Ct. 255.  There is no statute giving the power.  The statute authorizing a town to erect or authorize gas works does not by mere implication, give this great law making power.  See *Knoxville* v. *Water Co.,* 212 U. S., p. 8. "Grant of such power is never to be implied." *Interstate Com.* v. *Railway Co.,* 167 U. S., pages 494, 495.  So, we conclude that the ordinance of the city of 31st of August, 1911, does not *per se* forbid the increase of the meter rate.

The original grants of franchise do not give the city power to regulate rates, since they only provide a maximum limitation on the grantees.  They cannot warrant the ordinance of 31st August, 1911.

But while that ordinance of 1911 cannot, of its own mere force, fix rates, it does not stand alone; that consideration does not decide the case.  We must look at other things.  I was inclined to think that the decree in the first suit was *res judicata* fixing right in favor of the company to change from fixed to meter rates, and did not fix the twenty cent rate, and that the company could charge more, if so doing would not increase in burden the charge of the flat rate.  But a majority of the Court hold that as the company, of its will, changed from flat rate to meter, and fixed a rate of twenty cents per 1,000 feet, the right to change and that rate were involved, and the decree is to be held as fixing that rate as a substitute for the flat rate, especially as in its answer the company said it was practically equivalent in extent of charge to the flat rate fixed by the original ordinance.  That it was claimed by the company to be the equivalent substitute for the former charge.  Furthermore, a majority of

the Court hold that as the gas company itself substituted the twenty cent meter rate for the flat rate, and charged that rate for thirteen years, and it was silently acquiesced in by the city for that time, and finally accepted and insisted upon by the council ordinance of 1911, all this operated to modify the original franchise, and fix the twenty cent rate as a new contract. A strong view, I must confess. Our conclusion is, the gas company cannot increase the meter rate over twenty cents per 1,000 cubic feet.

We affirm the decree overruling the motion to dissolve the injunction and we remand the cause to the circuit court.

*Affirmed.*