# CITY OF RED WING v. WISCONSIN-MINNESOTA LIGHT & POWER COMPANY.[1]

January 25, 1918.

No. 20,788.

**Gas — change of rate — arbitration under franchise.**

1. The provisions for arbitrating the rates to be charged by defendant, the holder of a franchise contract, for furnishing the city of Red Wing and its inhabitants with gas apply to the rates to the private consumers as well as to the municipality.

**Injunction — city interested party against breach of franchise.**

2. The city has an interest in maintaining the arbitration provision of the franchise in behalf of its inhabitants for whom it acted when granting the franchise; and, since the right of the city and its inhabitants to relief rests upon common ground; this action will lie if there be a threatened breach of the contract as to the gas consuming inhabitants, for thereby a multiplicity of suits is avoided.

Action in the district court for Goodhue county to restrain defendant from putting into effect increased gas rates. From an order, Johnson, J., granting a temporary injunction, defendant appealed. Affirmed.

*Brown, Abbott & Somsen,* for appellant.

*Charles P. Hall,* for respondent.

HOLT, J.

In 1872 certain persons obtained an exclusive franchise from the city of Red Wing to establish a gas plant therein and lay the necessary pipes or mains in its street, for the purpose of supplying the city and its inhabitants with gas. The duration of the franchise was 40 years, with 20 years additional, unless the city elected to buy the plant. Defendant now holds this franchise. In June, 1916, a schedule of rates for gas, effective on and after July 1, 1916, was proposed by defendant and accepted by the city council. On September 7, 1917, defendant notified the

[1]Reported in 166 N. W. 175.

city council that these rates so established by agreement would be increased 10 per cent on and after September 15, 1917. Thereupon the city brought this action to enjoin defendant from putting the increased rates into effect, claiming that under the terms of the franchise defendant could not change the rates established by agreement, except with the consent of the city council or as a result of an arbitration. Issue was joined and, on motion, the court restrained defendant pendente lite from increasing the rates of July, 1916. Defendant appeals.

The order rests solely upon the pleadings and the franchise ordinance therein referred to. The here material portions of the ordinance are contained in sections 3 and 4 thereof, which read as follows:

"Sect. 3. That said persons hereinbefore named, their heirs, executors, administrators and assigns, and the city council of the city of Red Wing may contract for and make regulations relating to the lighting of said city with gas in such manner as may be agreed upon. And they may make generally such contracts in relation thereto as may be beneficial to the said respective parties. In case the said persons, or their representatives and assigns, and the city council of the city of Red Wing cannot agree on the price to be charged for gas by said persons from time to time, then it shall be left to the arbitration and award of three disinterested persons to fix and determine said price. The said persons, their representatives and assigns shall, whenever notified so to do by the city council of said city, select one person to act as arbitrator, and the city council of said city one person for such purpose, and the two so selected shall choose a third, and said three arbitrators shall, with all convenient dispatch, proceed to hear the proofs and obligations of the parties and shall thereupon name and fix a price by report in writing, which shall be paid by said city for the use of gas for such time as may be agreed upon and submitted to arbitration and not less than one year. In case any of the parties selected should decline or neglect to act, the party selecting the person who declines, may select another or others until arbitrators can be found who will act and the determination of such arbitrators shall be binding on both parties for the term submitted. During the pendency of such arbitration, the said persons shall furnish gas and receive as compensation therefor the amount fixed by said arbitrators.

"Sect. 4. The said persons or their assigns shall commence the construction of their works within six months from the passage of this ordinance and shall, within eighteen months from the passage thereof, have not less than a mile and a half of pipe laid in said city of Red Wing, and gas works erected and be ready in all respects to furnish gas to those applying for it and shall furnish gas to the corporation or citizens of said city, whenever and wherever required, to the extent to which said persons, their heirs, executors and assigns may have their pipes laid at rates on an average not exceeding the prices charged by gas companies in other cities in the state of Minnesota, regard being had to freight and charges for materials for the manufacture of gas. In case of disagreement between said persons and city council of the city as to the price to be charged for gas to said corporation, the same shall be fixed as provided in section 3 of this ordinance."

The rights of the litigants are based solely upon the contract evidenced by the ordinance, and not upon any rate making power delegated to the city. It is not questioned, and could not well be, that in a franchise ordinance rates and the manner of fixing them, both for the city and its inhabitants, could be provided for, subject to the right of subsequent legislative interference. The main contention of defendant is that the arbitration provision in the two sections applies only to rates for gas used by the municipality and not to that supplied for private use. Therefore, it is argued that, since the answer avers a readiness to arbitrate the rates to be charged the city, no ground exists for enforcing arbitration by injunction; and, since the only basis for relief against the increased rates, fixed by defendant to private consumers, must be predicated upon the provision, in section 4, that such rates must not exceed the average price charged by gas companies in other cities of the state, and since the allegation of the complaint, in respect to such increased rates exceeding the average rates in other cities, is not positive but upon information and belief, the temporary injunction should not have been granted. There is a further claim in connection with this average rate clause, that it is so indefinite and unworkable as to be unenforceable.

There is no intimation of lack of authority in the city council to grant the franchise here involved. It is manifest that, in granting the same, benefits and privileges were intended to be secured not only to the

municipality itself, but to its inhabitants as well, that is, to those who in the future might desire to use gas. Hence, naturally, we look for provisions in the franchise guarding or protecting all consumers against an arbitrary fixing of gas prices by defendant. On examination of section 3 it is clear that, as to the rate to be charged the city for municipal or public purposes, it must be fixed by the arbitration therein specified, unless voluntarily agreed to between the city council and defendant. Fairly construed this section covers all gas used by the city, street lighting as well as other possible uses. Section 4 consists of two sentences, the first of which is awkward both as to form and thought. But the intent is clear enough, namely, to assure, within a specified time, gas to those applying for it at an average rate not exceeding prices charged by gas companies in other cities of the state. Then follows the sentence with a provision for arbitration in case of disagreement. The whole of section 4 should be held to relate exclusively to the rate and the method of ascertaining the same to private consumers, for the rate for municipal use and its determination has already been provided for under section 3. Nowhere in the ordinance is the word "corporation" found except in section 4, and where it first occurs it, apparently, is defined as referring to the citizens of Red Wing. The same meaning should be given the word "corporation" in the last sentence of the section. Given that meaning, we have no unnecessary repetition of the arbitration provision for the benefit of the city, but the arbitration of section 4 is to determine the rate to private consumers. The use of the word "corporation" to designate the inhabitants of Red Wing in the ordinance may here have been unfortunate as tending to create a doubt or ambiguity. But we find an excuse for such use in the first section of the charter as it existed when this franchise was drawn, which reads: "All that district of country in the county of Goodhue contained within the limits and boundaries hereinafter described, shall be a city by the name of Red Wing, and the people now inhabiting, and those who shall hereafter inhabit within the district of country herein described, shall be a municipal corporation." Here the municipal corporation is synonymous with the inhabitants of Red Wing.

We are not unmindful that a construction might be given, whereby section 3 would relate to street lighting only, and section 4 to other use

of gas by the city and to the use thereof by private consumers. But where, in a franchise, the interests of the public are involved, doubts and ambiguities must be resolved in favor of that construction which is most advantageous to the public. Unquestionably the fixing of rates by the arbitration provision is of a substantial advantage to the public. It fixes the rates for a definite time in the future. This courts cannot do. The clause providing for a rate not exceeding those in other cities in the state appears, to us, to merely point to the standard which the city council, the arbitrators, or the courts, as the case may be, should apply in determining what is a fair rate, in other words, the reasonable or market value of gas is to govern. So considered the provision, if of any real importance, does not seem to us invalid under the following cases relied on by appellant, viz.: City of Des Moines v. Des Moines Waterworks Co. 95 Iowa, 348, 64 N. W. 269, and City of Denver v. Denver Union Water Co. 41 Colo. 77, 91 Pac. 918. Both relate to waterworks and the furnishing of water, wherein a comparison between different localities with a view of obtaining a standard for rate fixing is much more difficult than in the case of gas plants. In the first case the arbitrators were to ascertain the average rates paid in other cities of the United States having efficient waterworks and it was held ineffective as being impossible of ascertainment. In the last named case the provision was sustained insofar as it related to an average of the meter water rates in the three cities specified in the ordinance and was held inoperative only as to supplying water through fire hydrants. In neither case was there present the important item bearing upon the reasonableness of the rate contained in the Red Wing ordinance, to-wit, that regard should be had for freight and charges for materials for the manufacture of the commodity to be supplied, which virtually reduces the provision to a direction to ascertain the reasonable value of gas to consumers.

Construing this ordinance as we do, many of the technical objections raised against the propriety of granting a temporary injunction vanish. We need not consider whether the allegation on information and belief that the proposed increase exceeds the average rate charged for gas in other cities is sufficient to support the order when met by a positive denial. The controlling feature is whether the defendant may fix rates for private consumers without the consent of the city council and without arbitration.

It is plain from the pleadings and from the position taken in this court, that the professed readiness of defendant to arbitrate is only in respect to gas furnished the city for public use, and not to that furnished the several inhabitants thereof. Indeed, defendant positively denies that the consent of the city council or the determination of arbitrators can interfere with the increased rates established by it. In this situation we think the omission of an averment in the complaint that defendant had been notified by the city council to name an arbitrator, as prescribed by section 3, should not be held fatal; for it is evident that, had the notice been given, it would have been ignored. The real issue upon which defendant plants its defense is the claim that the arbitration provision does not apply to the fixing of rates for private consumers. And we think the court below had a right to consider the probable outcome of that issue in deciding whether the motion for a temporary injunction should be granted or denied.

The city of Red Wing represented not only the municipality but its several inhabitants in making this franchise contract. And in bringing this action to enforce that contract as to a provision thereof which defendant repudiates while holding on to the others, the city acts not only as a municipality but as a sort of trustee for its inhabitants. It is also clear that this one action will avoid the many suits that might be necessary in case each consumer of gas was left to seek redress in an action for damages, were an illegal rate suffered to be established by defendant. All the objections urged by appellant to the maintenance of this action are ably answered and refuted in Muncie Natural Gas Co. v. City of Muncie, 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822. See also St. Mary's v. Hope Gas Co. 71 W. Va. 76, 76 S. E. 841, 43 L. R. A. (N. S.) 994. Between the city and the private gas consumers of its inhabitants there exists a common interest to relief against defendant, based on the arbitration provision of the franchise. We conclude that that relief may properly be sought in this action, thereby avoiding a multiplicity of suits by the private consumers to redress the threatened wrong.

The order is affirmed.