# TOWN OF BURNSVILLE AND OTHERS v. CITY OF BLOOMINGTON AND OTHERS.

117 N. W. (2d) 746.

November 2, 1962—No. 38,665.

**134**

*John G. Pidgeon,* for appellant.

*Grannis & Grannis,* for respondents.

*Briggs & Morgan, Richard E. Kyle, Frank N. Graham,* and *David C. Forsberg,* for Independent School District No. 191, amicus curiae.

*Faegre & Benson, Armin M. Johnson, Gordon G. Busdicker,* and *Donald E. Nelson,* for Northern States Power Company, amicus curiae.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court granting a temporary injunction in proceedings challenging an annexation.

Plaintiffs are the town of Burnsville, a duly organized township; the members of the town board; and an individual resident of the town who owns property in the city of Bloomington, one of the defendants.

The defendants are the city of Bloomington; the mayor of the city; and the auditor, treasurer, assessor, and commissioners of Dakota County, in which the town of Burnsville is located. The city of Bloomington is located in Hennepin County.

Northern States Power Company is the owner of certain land in

the town of Burnsville, the description of which is not material here, on which is located a power plant known as the "Black Dog Plant." The Minnesota River runs between the city of Bloomington and the town of Burnsville.

On August 22, 1961, Northern States Power Company filed a petition with the city of Bloomington pursuant to Minn. St. 414.03, subd. 2, requesting that its property located in the town of Burnsville be annexed by the city of Bloomington. On the same day the city adopted an ordinance purporting to annex the property described in the petition.

Plaintiffs promptly commenced an action for a declaratory judgment, seeking a determination that the annexation was void for a number of reasons and, as a part of the action, sought injunctive relief to restrain defendants from doing any further act to carry out the annexation ordinance. The trial court granted a temporary restraining order on September 6, 1961, and on September 15 heard a motion for a temporary injunction. On December 26 the court granted this motion and denied defendants' motion to dissolve the temporary restraining order theretofore issued and to dismiss the action. This appeal is from such order. In Town of Burnsville v. City of Bloomington, 262 Minn. 455, 115 N. W. (2d) 923, we held that the part of the court's order denying the motion to dismiss the action was not appealable but that the part of the order granting the motion for a temporary injunction was, and we dismissed the appeal from that part of the order which was not appealable. It follows that the case is here as an appeal from the order granting a temporary injunction.

We are not concerned with the merits of the controversy in this appeal. The questions raised are procedural only. It is the contention of defendants (1) that the validity of the annexation cannot be tested in a suit for an injunction, and (2) that plaintiffs, as private persons, may not attack a de facto annexation. Basically, it is the claim of defendants that a quo warranto proceeding, brought by the state, is the exclusive method for challenging the validity of an annexation proceeding.

1. At the outset it must be noted that one of the plaintiffs is the town from which the land to be annexed by the city is to be taken.

In State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 264 N. W. 798, 266 N. W. 689, 20 Minn. L. Rev. 832, we held that a town from which it was proposed to detach land by annexation to a city has such a special interest in the proceeding as to enable it to challenge the annexation. We there said (196 Minn. 289, 264 N. W. 800):

"We pass the question whether the present relator, an organized town, may properly be called a private relator. It is such if 'any relator other than the attorney general' is a private relator, and such may be the correct legal view. Assuming it to be so, yet relator plainly has a very substantial and special interest when of its territory there is sought to be taken away such a substantial portion, in area and value, as that which has been included within the new Chisholm limits. * * * That a town has a very direct, special, and vital interest in retaining so much of area and assessed value is not and will not be denied by anybody. Relator is clearly within the rule declared in State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L. R. A. (N. S.) 826, 6 Ann. Cas. 905, and State ex rel. Wah-we-yea-cumin v. Olson, 107 Minn. 136, 119 N. W. 799, 21 L. R. A. (N. S.) 685."

That decision controls here in so far as the right of the town to challenge the validity of the annexation is concerned.

2. We also held in that case that, once the town has commenced a proper proceeding, taxpayers and residents of the town could be permitted to intervene. In that respect we said (196 Minn. 295, 266 N. W. 689):

"Several taxpayers and residents of the town of Balkan and some mining companies, which own property in the affected area, also filed petitions for leave to intervene. It appears that these petitioners may have 'special rights' that will be affected by the final determination of the case. We are of opinion that no harm can result by permitting them to intervene, and their petitions to do so are granted. That does not mean that we would have permitted them to come in as the original and only relators. Compare State ex rel. Wah-we-yea-cumin v. Olson, 107 Minn. 136, 119 N. W. 799, 21 L. R. A. (N. S.) 685."

In State ex rel. Wah-we-yea-cumin v. Olson, 107 Minn. 136, 138, 119 N. W. 799, 800, 21 L. R. A. (N. S.) 685, 688, we said:

"* * * The question ought at this time to be definitely settled and put at rest, and to that end we hold, in harmony with what seems the trend of judicial opinion, that leave to conduct quo warranto proceedings to test the legality of the organization of municipal or quasi municipal corporations will not be granted at the instance of private relators having no interest in the subject-matter distinct from the public. The Dahl case should be limited to facts like those there before the court."

If taxpayers and residents may be permitted to intervene after a proper proceeding is commenced by the town, there is no good reason why they cannot be permitted to join the town in the first instance. As in the Stuntz case, we need not determine here whether they would be permitted to maintain the action if they were the original and only plaintiffs. We do hold that, once a proper proceeding is commenced by the town from which territory is to be detached by an annexation proceeding, it is not improper for residents and taxpayers of the town to join as parties with the town in challenging the annexation. Whether taxpayers and residents have such a special interest aside from the public in general as to permit them to challenge the annexation individually we do not here determine.

3. The crucial question then is whether the validity of a de facto annexation may be tested by an action brought for a declaratory judgment by the town from which territory is to be detached. While defendants urge that the question is whether the validity of such annexation may be tested by a suit for an injunction, the injunctive relief granted here is only incidental to the action for a declaratory judgment in maintaining the status quo until the main action can be determined.

Authorities from other jurisdictions are not at all in harmony on whether quo warranto is the exclusive remedy; whether a suit for an injunction constitutes a direct or collateral attack; or whether an action for a declaratory judgment may be used to test the validity of proceedings of this kind. The number of authorities on the latter question are

few, but on the whole subject, see Annotations, 13 A. L. R. (2d) 1279 and 18 A. L. R. (2d) 1255; 1 Antieau, Municipal Corporation Law, § 1.19; 2 McQuillin, Municipal Corporations (3 ed.) § 7.41. Due to the difference in the history of the development of case law or enactment of statutes in the various states, decisions are frequently inapplicable.

It must be conceded that there are authorities holding that a suit for injunctive relief alone is not a collateral attack on a de facto annexation and is therefore permissible.[1] In analogous cases we have followed the rule that it is a collateral attack and cannot be maintained.[2] However, whatever the rule may be with respect to the right to maintain a suit for an injunction alone, it is clear that injunctive relief is available as an incident to an action for a declaratory judgment where such action will lie, in order to maintain the status quo, if the facts are such as to warrant it. In 1 Anderson, Declaratory Judgments (2 ed.) § 358, we find the following:

"In declaratory judgment actions the court can grant two-fold relief; one, a declaration of rights, and the other by injunction, but this does not mean that other forms of relief may not be granted, such as appointment of a receiver, or that in the alternative some other prayer may not be granted. And it seems, that the court may grant either a temporary or permanent injunction in order to preserve the status pending the granting of the declaration."

In 26 C. J. S., Declaratory Judgments, § 111b, we find the following:

"It is well settled that, in a proper case, the court, in an action for a declaratory judgment, in its discretion, may issue a temporary injunction pending a final determination of the action. On an application

---

[1] Red River Valley Brick Co. v. City of Grand Forks, 27 N. D. 8, 145 N. W. 725; Lutien v. City of Kewaunee, 143 Wis. 242, 126 N. W. 662, 127 N. W. 942; see, Town of Blooming Grove v. City of Madison, 275 Wis. 328, 81 N. W. (2d) 713.

[2] Burke v. Leland, 51 Minn. 355, 53 N. W. 716; Doyle v. Ries, 205 Minn. 82, 285 N. W. 480.

for a preliminary injunction, the court weighs the respective consequences to the parties; and where the injury to the moving parties would be certain and irreparable if the application for a temporary injunction was denied, and if the injunction was granted the injury to the opposing parties, even though the final decree should be in their favor, would be inconsiderable, a temporary injunction will be issued to preserve the status quo until a trial on the merits; but where defendant would suffer irreparable harm if a preliminary injunction is granted, an injunction pendente lite will be denied."[3]

While a temporary injunction granted to maintain the status quo during the pendency of an action for a declaratory judgment is permissible, it should be granted in the exercise of judicial discretion only when it appears that more harm will result from its denial than from its issuance. On appeal to this court, the trial court's determination of this issue will ordinarily be reversed only where there is a clear abuse of discretion. We find none here.

4. There is no doubt but that quo warranto or, more properly, an information in the nature of quo warranto has been and still is a proper proceeding to question the validity of annexation proceedings.[4]

The history and nature of this writ have been so exhaustively and thoroughly examined in State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948; State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 264 N. W. 798, 266 N. W. 689, 20 Minn. L. Rev. 832; State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 48 N. W. (2d) 855, and other decisions of this court that it would serve no useful purpose to attempt to restate them here. Originally, at least, the commencement of such proceeding rested almost exclusively

[3]See, also, Borchard, Declaratory Judgments (2 ed.) p. 434; 16 Am. Jur., Declaratory Judgments, § 78, 1962 Cumulative Supp. p. 98; Annotation, 155 A. L. R. 501, 514; Town of Blooming Grove v. City of Madison, 275 Wis. 328, 81 N. W. (2d) 713.

[4]State ex rel. Childs v. Board of County Commrs. 66 Minn. 519, 68 N. W. 767, 69 N. W. 925, 73 N. W. 631, 35 L. R. A. 745; State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 48 N. W.(2d) 855.

under the control of the attorney general. That control, however, has been whittled away over the years to such an extent that little remains of it except a formality. In the Stuntz case, we held that the town from which an annexation was to detach territory could maintain a quo warranto proceeding even if the attorney general refused to give his consent. If, then, the proceeding may be maintained by a proper party, either with or without the attorney general's consent, it is difficult to comprehend any logical reason for denying such party the right to maintain the proceeding without the formality of a request for consent which can no longer control the right to commence the proceeding.[5]

Defendants rely largely on State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 538, 48 N. W. (2d) 855, 861, where we said:

"The procedure for obtaining a statutory writ of quo warranto is not identical in all respects with the common-law procedure for filing an information in the nature of a quo warranto. In an action under § 480.04 for a writ of quo warranto, as under the common law, no summons or complaint is necessary. Where the application for the writ is made by the attorney general ex officio, the public interest requires that the writ issue. Where, however, the issuance of the writ is sought by a private individual with the consent of the attorney general—only in a few very restricted circumstances is the attorney general's consent not necessary—the private individual must petition the court for leave to file an information *for* a writ of quo warranto. The granting or withholding of leave to file an information *for* a writ of quo warranto at the instance of a private individual, with or without the consent of the attorney general, rests in the sound discretion of the court. When, however, the supreme court permits an information *for* a writ of quo warranto to be filed *and has issued the writ,* the court is deemed to have exercised its discretionary power favorably for the relator, and it is

---

[5]See, Riesenfeld, Bauman, and Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota,* 37 Minn. L. Rev. 1, 33.

immaterial that relator failed to petition the court for leave to file the information upon which the writ was issued. * * *

"Does a private citizen, however, with the consent of the attorney general, have the right to use the writ of quo warranto to test the validity of *annexation proceedings?* Where the party aggrieved may obtain full and adequate relief in either a common-law or equitable action, a writ of quo warranto is not available. * * * To permit private individuals to question collaterally the validity of annexation proceedings at any time thereafter would cause serious consequences to public and private interests.

"The information in the nature of quo warranto has undergone a 'broadening process of evolution, becoming more elastic in process with a view to accomplishing a purpose characteristic of American and English constitutional law, that for every wrong there should be a remedy.' In our jurisdiction, the writ of quo warranto at the instance of the attorney general ex officio has been allowed against a municipal corporation to test the legality of its incorporation and also to test the legality of its annexation proceedings. Our court has extended the scope of the writ of quo warranto by issuing such writs upon the relation of a municipal corporation *without* the consent of the attorney general and upon the relation of private corporations *with* the consent of the attorney general for the purpose of contesting municipal incorporation proceedings. Our court has never before, until this case, issued a writ of quo warranto at the relation of a private individual *with* the consent of the attorney general to challenge the validity of an annexation proceeding by a municipal corporation. If, however, a writ of quo warranto is the proper remedy upon the relation of a municipal corporation *without* the consent of the attorney general or upon the relation of a private corporation *with* the consent of the attorney general for ousting or dissolving a municipal corporation *in toto,* there is no reason in principle why it should not lie upon the relation of a private individual *with* the consent of the attorney general to challenge directly the validity of *annexation proceedings,* even though such proceedings are necessarily of a public nature. A private person, therefore, with the consent of the attorney general and with leave of our court may file an information *for* a writ of quo warranto to contest

an *annexation* proceeding by a municipal corporation, and, if successful, is entitled to the issuance of a writ of ouster with respect to the territory sought to be annexed."

It is true that there are statements in State ex rel. Danielson v. Village of Mound, *supra,* and some of our other decisions that indicate an information in the nature of a writ of quo warranto is the exclusive method for testing the validity of an annexation proceeding. It must be kept in mind, however, that these statements, often obiter dicta, have their roots in cases decided prior to our adoption of the Uniform Declaratory Judgments Act in 1933.[6] Even in these earlier cases we recognize the possibility that some other statutory remedy might be provided. In Evens v. Anderson, 132 Minn. 59, 63, 155 N. W. 1040, 1042, which was an action for an injunction, we said:

"It is claimed that this is a direct, as distinguished from a collateral, attack. We shall not spend time in discussion of that question, for we conceive that it is not important. In some decisions we find the language that the existence of a public corporation cannot be drawn into question in a collateral action between private parties. We think the rule equally well settled and sound that private citizens cannot raise such question by any form of direct attack. *Quo warranto* is the proper and, *in the absence of statute,* the exclusive proceeding to determine the question of the legal existence or validity of the organization of a public corporation." (Italics supplied.)

In State v. Honerud, 66 Minn. 32, 33, 68 N. W. 323, we said:

"* * * Considerations of sound public policy forbid it, and suggest that the question ought to be considered as a public one, to be raised only by the state itself by quo warranto *or other direct proceedings."* (Italics supplied.)

The portion of the Declaratory Judgments Act material here reads (Minn. St. 555.02):

"Any person interested under a deed, will, written contract or other

---

[6] L. 1933, c. 286.

writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, *municipal ordinance,* contract or franchise may have determined any question of construction or validity arising under the instrument, statute, *ordinance,* contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." (Italics supplied.)

In Portland General Elec. Co. v. City of Estacada, 194 Ore. 145, 156, 241 P. (2d) 1129, 1133, the Oregon Supreme Court was confronted with a similar problem. It said:

"* * * It will be noted that practically all of the Oregon cases holding that quo warranto is the sole remedy were decided prior to the passage of the declaratory judgment act in 1927. Anderson on Declaratory Judgments, vol. 1, 2d ed, 396, § 195, has the following to say:

" 'The holdings that a declaratory judgment action may be entertained without regard to the existence of another remedy, are not only sustained by the better reasons, but are more in harmony with the true spirit and purpose of the declaratory procedure.' "

An action for a declaratory judgment is not a collateral but a direct attack on the annexation.

In Town of Blooming Grove v. City of Madison, 275 Wis. 328, 338, 81 N. W. (2d) 713, 718, the Wisconsin court said:

"We consider, however, that the attack on the annexation ordinance by the present action is direct, not collateral, since the primary and indeed only purpose of the action is to obtain an adjudication that the ordinance is invalid and incidental injunctive relief against attempts to enforce it. Challenge of the annexation is the main objective, not a side issue, and the action moves directly to that end."

5. Frequently in these proceedings there are questions of fact to determine. The trial court is much better equipped to hear testimony and determine questions of fact than is this court. While both the district court and this court had original jurisdiction in quo warranto[7]

---

[7]Minn. St. 484.03, 480.04.

prior to the amendment of Rule 81.01 of Rules of Civil Procedure, we had stated that where questions of fact are involved it is preferable to commence quo warranto proceedings in the district court.[8] The abolition of the writ of quo warranto and the information in the nature of quo warranto by amendment of Rule 81.01 did not affect the jurisdiction of this court to entertain such proceedings in the future. That an action for a declaratory judgment brought in the district court may exist side by side with the jurisdiction of this court to entertain original proceedings for quo warranto was established in Williams v. Rolfe, 257 Minn. 237, 242, 101 N. W. (2d) 923, 927, where we said:

"Plaintiff may have a review of the constitutionality of L. 1957, c. 730, pursuant to M. S. A. 555.01 and 555.11 of the Uniform Declaratory Judgments Act, or § 556.01, which provides for an action to prevent the usurpation of office. Also a writ of quo warranto may be available to him pursuant to § 480.04, which grants the supreme court power to issue such writs. This remedy is not restricted by Rule 81.01(2) of Rules of Civil Procedure, which abolished the writ of quo warranto and information in the nature of quo warranto, since the rules of civil procedure are only applicable to the district courts."

6. Aside from the technical control over these proceedings by the attorney general, which now is justified more on the basis of history than reality, as we have pointed out above, there seems to be no good reason why the validity of annexation proceedings cannot be determined as well or better and as expeditiously by a declaratory judgment action as by a quo warranto proceeding. We now hold that the action will lie at the instance of the town or governmental subdivision from which it is sought to detach territory.

7. The claim is advanced that to now discard the necessity for initially requesting the consent of the attorney general to test the

---

[8]State ex rel. Hilton v. So-called "Village of Minnewashta," 165 Minn. 369, 206 N. W. 455; State ex rel. Burnquist v. Village of North Pole, 213 Minn. 297, 6 N. W. (2d) 458; State ex rel. Peterson v. City of Fraser, 191 Minn. 427, 254 N. W. 776.

validity of an incorporation of a village or an annexation proceeding will create havoc by subjecting the municipality to a multiplicity of vexatious suits by every individual who wishes to bring one, sometimes long after the annexing municipality has acted on the assumption that the annexation was valid. We think this can be easily avoided by holding, as we do here, that the action may be brought by the town or governmental subdivision from which territory is to be detached and that a determination of the rights of the annexing municipality and such other town is res judicata on all the residents and taxpayers of the governmental units involved. A similar question was considered in City of Red Wing v. Wisconsin-Minnesota Light & Power Co. 139 Minn. 240, 166 N. W. 175, 2 Minn. L. Rev. 463, which involved the validity of gas rates established by defendant. In that case we said (139 Minn. 245, 166 N. W. 177):

"The city of Red Wing represented not only the municipality but its several inhabitants in making this franchise contract. And in bringing this action to enforce that contract * * * the city acts not only as a municipality but as a sort of trustee for its inhabitants. It is also clear that this one action will avoid the many suits that might be necessary in case each consumer of gas was left to seek redress in an action for damages, were an illegal rate suffered to be established by defendant. All the objections urged by appellant to the maintenance of this action are ably answered and refuted in Muncie Natural Gas Co. v. City of Muncie, 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822. See also St. Mary's v. Hope Gas Co. 71 W. Va. 76, 76 S. E. 841, 43 L. R. A. (N. S.) 994. Between the city and the private gas consumers of its inhabitants there exists a common interest to relief against defendant, based on the arbitration provision of the franchise. We conclude that that relief may properly be sought in this action, thereby avoiding a multiplicity of suits by the private consumers to redress the threatened wrong."

The same is true here. Holding as we do that the town from which territory is to be detached may maintain the action for a declaration of its rights and that a determination of such rights is res judicata as to all the inhabitants of the town, we see no danger of any multi-

plicity of suits. As a matter of fact, it will in all probability eliminate that danger.

8. Amicus curiae asserts that, since we abolished the writ of quo warranto by an amendment to our rules of civil procedure, only the supreme court has jurisdiction over proceedings to test the validity of municipal annexations. While this contention has been adequately answered above, we do not agree with the contention. While the antiquated writ of quo warranto as such is abolished, and probably with it some of its former technical limitation, the remedies formerly afforded by the writ are expressly retained and may be obtained by any other available appropriate action. Rule 81.01, as far as material, reads:

"The writ of mandamus and the writ of quo warranto and information in the nature of quo warranto are abolished. The relief heretofore available thereby may be obtained by appropriate action or appropriate motion under the practice prescribed in these rules."

It is abundantly clear that it is only the procedure that is affected by the amended rule and not the relief.

We therefore hold that the validity of an annexation such as we have here may be tested by an action for a declaratory judgment brought by the town from which it is proposed to detach territory and that as an incident to such action the trial court may, when the facts warrant it, grant injunctive relief to maintain the status quo pending determination of the main action.

Affirmed.