STATE ex rel. FREDERICK E. RUESSWIG v. RONALD S. McDONALD
and Others.[1]

June 14, 1907.

Nos. 15,292—(209).

**New Counties.**

R. L. 1905, § 380, and the following sections relating to the creation and organization of new counties, *held* a continuation of the existing statutes upon the subject, and not new, independent enactments.

**Revision of Statute.**

The amendment or revision of a statute, the same being a continuation of existing laws, does not at common law abrogate or terminate proceedings pending when the amendment or revision goes into effect.

**Same—Pending Proceedings.**

Section 5505, R. L. 1905, providing for the continuation of pending proceedings, construed to include all proceedings pending when the revised laws went into effect, whether related to civil actions or otherwise.

[1] Reported in 112 N. W. 278.

**Quo Warranto—Private Action.**

The court may in its discretion permit private suit in the nature of quo warranto to determine the validity of proceedings for the creation of a new county, without the consent of the attorney general; but leave will be granted only in exceptional cases.

**Discretion of Court.**

It is *held* in this case that the court below did not abuse its discretion in refusing relator the right to institute suit to determine the legality of the organization of Koochiching county and the right of respondents to the office of county commissioners thereof.

Appeal by relator from an order of the district court for Itasca county, McClenahan, J., denying an application to file an information in the nature of quo warranto, without the consent of the attorney general, and discharging an order requiring respondents to show cause why leave should not be granted to file an information to test the right of respondents to hold office as members of the board of county commissioners of Koochiching county. Affirmed.

*George H. Spear, Aad A. Tone, A. Y. Merrill,* and *R. J. Powell,* for appellant.

*C. W. Stanton* and *C. C. McCarthy,* for respondents.

BROWN, J.

The facts in this case, briefly stated, are as follows: On January 25, 1906, a petition in due form of law for the creation of a new county out of territory within the boundaries of Itasca county, to be known as Koochiching county, was presented to and filed with the secretary of state. It contained the requisite number of signers and was in all respects in compliance with the statute under which it was presented. Chapter 143, p. 262, Laws 1893. On February 15 of the same year a petition for another new county out of territory embraced within the same county was properly filed with the secretary of state, praying for the creation of Forest county. Again, on February 26, 1906, a third new county was petitioned for out of territory within the boundaries of those specified in the two preceding petitions, to be named Northome county. The several petitions were regularly presented to the governor, auditor, and secretary of state, as required by the statute above referred to, and by them found and certified to be in

all respects in conformity with the requirements of law. They were competing petitions, however; the territory designated in each for the proposed new county being embraced in the other two. On April 27, 1906, the governor, acting under the provisions of section 382, R. L. 1905, caused to be issued a proclamation submitting to the voters of Itasca county the proposition for the organization of Koochiching county only. He refused to submit the other two petitions, for the reason that, in his opinion, the statute last cited controlled his action in the premises, and prohibited the submission of more than one proposition at the same election. The Koochiching county petition, having been first presented, was granted the preference. The question was thereafter submitted to the electors at the general election in 1906. A majority of the voters cast their ballots in favor of the new county, and it was thereafter by proclamation of the governor declared created and established. Respondents herein were duly named as the first board of county commissioners, as required by the statute under which the organization of the county was had, and have qualified and are acting as such.

Relator, a taxpayer of Itasca, the parent county, presented these facts to the attorney general, and requested him, as the chief law officer of the state, to institute appropriate proceedings for the purpose of determining the validity of the proceedings by which the county was declared created and the right of respondents to exercise the functions of the office of county commissioners. After full consideration, the attorney general refused to grant the request and dismissed the application. Whereupon relator, upon a full presentation of the facts, applied to the district court of Itasca county for leave to file information in the nature of quo warranto, notwithstanding the refusal of the attorney general, to the end that the validity of the claim of respondents to the office of county commissioner might be determined. The district court denied the application, and relator appealed.

It is firmly settled law in this state, whatever may be the trend of decisions elsewhere, that public rights must ordinarily be vindicated by public authority; in other words, that private action cannot be maintained to enforce rights belonging to the public at large. The principle is illustrated in many different actions brought by persons having no interest, distinct from the public, in the subject-matter

sought to be litigated; for instance, actions to abate and enjoin public nuisances, to remove obstructions and encroachments upon public streets or highways, and actions to determine the validity of the election of persons to public office. In all such cases it is generally held to be the exclusive province of the state, through the attorney general, to uphold and enforce by appropriate proceedings the rights of the public, and a person having no special interest in the subject cannot, as a matter of right, be heard in judicial proceedings to right what may seem to him a wrong.

As respects the right of a person to hold and exercise the functions of a public office, the case of Barnum v. Gilman, 27 Minn. 466, 8 N. W. 375, 38 Am. 304, laid down the rule, and the decision there rendered is in accord with the great weight of authority in this country—that "quo warranto will not be issued without the consent of the attorney general upon information of a private party, having no personal interest in the question distinct from the public, to try the right of an incumbent of a public office to hold the same." It is held by many of the authorities that the refusal of the attorney general to institute proceedings to test the right of a person to public office is final, and precludes even the courts from granting leave to sue to private suitors, though there are respectable authorities to the contrary. The rule laid down in the Barnum case has always been adhered to in this state, and the principle applied, as suggested, in various forms of action involving only public rights and interests. The rule of the exclusive authority of the attorney general has not, however, always been followed in this state, though his judgment and discretion is disturbed only in exceptional cases. State v. Dahl, 69 Minn. 108, 71 N. W. 910. Under the doctrine of that case, the court may in its discretion, in a case involving the right of an incumbent of a public office to hold and exercise the functions of the same, review the action of the attorney general, and in its discretion grant leave to a private party to prosecute quo warranto proceedings.

The case at bar does not involve the naked right of respondents to the office of county commissioners. The relief sought goes far beyond this. Relator seeks to call in question the legality and validity of the proceedings by which the county was created, and the naming of respondents as parties and demanding to know by what right they

assume to hold their office was a means to an end, and in no sense conclusive of the full scope of the intended inquiry and investigation. The Dahl case involved the right of an incumbent to a de jure office, and not the existence of the office itself. It is doubtful whether the rule announced in that case should be extended to permit a private suit to determine the legality of an election held for the purpose of creating or organizing a county or other political subdivision of the state for local government. It would seem that the refusal of the attorney general to institute proceedings in a case of that kind should be final. But, conceding that the rule of the Dahl case should be extended, we have only to inquire whether within it the court below abused its discretion.

It is contended by relator, in support of the claim that the court below did abuse its discretion in refusing the relief prayed for, that the submission of the Koochiching county proposition to the voters was wholly illegal and void. This contention is based upon the theory (1) that the provisions of the revised laws relating to county division were new enactments on the subject, and not a mere continuation or revision of the existing statutes under which these proceedings were commenced, and, therefore, that the proceedings for the organization of this and the other two counties were not saved or continued in force by section 5505 of the revised laws, but lapsed and terminated when the revision went into effect; and (2) that if that position be not sustained, and it be held that the proceedings remained unimpaired by the revision, all survived, and three propositions should have been submitted to the voters under the old statutes.

If counsel's first contention were sound, it would follow almost as a natural consequence that it was an abuse of discretion on the part of the trial court to refuse a remedy designed to prevent a consummation of an illegal act; for the discretion vested in courts and judicial officers does not permit an arbitrary exercise of power unaffected by the rules and principles of law applicable to the matter acted upon. Judicial discretion, properly understood, requires a court in exercising it to give force and effect, not to the will of the judge, but to the law. So that, if the proceedings in question lapsed and became in effect functus officio when the new statutes went into effect, the elec-

101 M.—23

tion under the Koochiching petition had no legal foundation for its support and was a nullity.

We do not, however, concur with relator in his view of the question presented. That the provisions of the revised laws on the subject of county division were continuations of existing statutes we have no serious doubt. Section 5508 expressly provides that the various provisions thereof "so far as they are the same as those of existing statutes shall be construed as continuations thereof, and not as new enactments." This language is plain and explicit, and entitled to a reasonable construction—one that will give effect to the intention of the legislature. At the time of the revision (1905) there were existing statutes on this subject of county division, and under them these proceedings were commenced and were pending at the time the revision went into effect. The same statutes were carried forward into the revised laws, and though some changes were made in phraseology, and in other respects in point of substance, it was the manifest intention that the new should be a continuation of the existing enactments. So far as new features were incorporated in the revision, they constituted original enactments. 1 Sutherland, Stat. Const. 237. But the statutes as a whole merely carried forward existing laws. Kerlinger v. Barnes, 14 Minn. 398 (526); 26 Am. & Eng. Enc. (2d Ed.) 758, and cases cited.

Nor have we any doubt that the proceedings looking to the organization of this county remained unimpaired by the new statutes. It is well settled at common law, independent of statutory saving clauses, that the amendment or revision of a statute does not necessarily impair vested rights, nor abrogate or terminate proceedings pending when the amendment or revision goes into effect. Davidson v. Gaston, 16 Minn. 202 (230); Gaston v. Merriam, 33 Minn. 271, 22 N. W. 614; Julien v. Model Loan Co., 116 Wis. 79, 92 N. W. 561, 61 L. R. A. 668; Moore v. Township, 75 Mich. 332, 42 N. W. 944, 4 L. R. A. 555; United v. Benshimol, 130 Mass. 325; Capron v. Strout, 11 Nev. 304; 26 Am. & Eng. Enc. (2d Ed.) 758; 1 Sutherland, Stat. Const. 238. Though there is some conflict in the authorities upon the question, the weight of authority, both in number of decided cases and in reason, sustains the view here expressed. The cases supporting both views are cited in 26 Am. & Eng. Enc. (2d Ed.) 758. But the revision of our

statutes, by which it is claimed the proceedings in question were terminated, contains the usual saving clause. Section 5505 expressly provides for the continuance of pending proceedings.

The suggestion that this does not apply to other than proceedings in "civil actions" is not sound. Though the statute, construed according to its letter, would seem to limit the saving features thereof to civil actions, such was not the intention of the legislature. It was merely declaratory of the common-law rule on the subject, and by it the legislature intended to preserve all pending proceedings and to continue them in force, subject to the further requirement therein contained that they should be conducted after the revision, so far as practicable, in conformity with the new statutes. A construction of this statute in harmony with relator's contention would lead to disastrous results. Undoubtedly numerous proceedings other than in civil actions were pending when the revised laws went into effect, and no good reason can be given for supposing that the legislature intended that they should all be brought to an end on the coming into force of the new statutes.

It is further insisted that, if the proceedings were continued in force after the date when the new statutes went into effect, all three county propositions were preserved, and proceedings thereon should have been conducted in conformity with the old statutes, which required the submission of each of them to the voters, and that the act of the governor in submitting the Koochiching county proposition only was a violation of the law and void. It must be conceded that prior to the adoption of the revised laws of 1905 the governor would have been required, under the then existing statutes, to submit all the propositions at the same election. State v. Larson, 89 Minn. 123, 94 N. W. 226. But we do not deem it necessary to determine whether the new or the old statutes controlled the proceedings. The question is attended with some difficulties. Granting, however, that all three propositions should have been submitted at the same election, we are clear that the action of the governor in submitting only one of them was not so far illegal as to render the election a nullity. It was at most an irregularity, a failure in the performance of an executive duty, which, in view of the nature of the question acted upon, the court would be very loth to characterize, as a matter of law, an unqualified illegality. The question with which the governor was confronted was whether the old or

the new statute controlled his action—whether the voters should be confused by the submission of three competing county propositions, or whether a division of the county should be left to them upon one clear and definite proposition, as contemplated by the new law on the subject. He determined in favor of the new statute and the submission of one definite question.

Without regard to whether the executive was right or wrong, as a matter of strict law, it is manifest that no prejudice resulted, and relator is in no position to insist that proceedings be instituted to nullify the election. All the proceedings in reference to the creation of this particular county were in conformity with the statutes, both old and revised. The petition therefor was first prepared and presented, and had no relation to the other subsequently filed petitions. The fairness of the election is not called in question, and the voters favored the new county by a substantial majority. The submission of the proposition, therefore, should not be declared illegal and void merely because the voters were not confused by the submission of other competing petitions. Much less should it be said, in the face of the attorney general's opinion that the matter be regarded as a finality, that the court below abused its discretion in refusing relator the relief prayed for.

Our conclusion is that the facts presented do not show an abuse of discretion on the part of the court below, and the order appealed from is affirmed.