# STATE EX REL. TOWN OF STUNTZ v. CITY OF CHISHOLM AND OTHERS.[1]

No. 30,809.

January 24, 1936.

*Clarence H. Kleffman, Thomas H. Strizich,* and *R. L. Mayall,* for relator.

*John H. Hougen, Charles T. Wangensteen,* and *Frank M. Talus,* City Attorney, for respondents.

[1]Reported in 264 N. W. 798, 266 N. W. 689.

Clarence H. Kleffman and Thomas H. Strizich, for relator.

Wilson & Wilson, John H. Hougen, and Charles T. Wangensteen, for respondents.

Harry H. Peterson, Attorney General, David J. Erickson, Assistant Attorney General, and William D. Gunn, for the State.

Victor E. Essling, Everett P. Freeman, and S. C. Scott, for interveners Town of Balkan and certain taxpayers.

John M. Gannon and Baldwin, Holmes, Mayall & Reavill, for interveners Rathbun Iron Mining Company, Republic Steel Corporation, Snyder Mining Company, Oliver Iron Mining Company, and International Harvester Company.

JULIUS J. OLSON, JUSTICE.

This matter is before us upon motion of the town of Stuntz for leave to file an information in the nature of quo warranto against the city of Chisholm and certain of its officers also named as respondents. Both the municipal corporations are in St. Louis county.

According to the proposed information, the former village of Chisholm has attempted to reincorporate as a city, a special election to pass upon that question having been held September 1, 1934, at which the proposal for reincorporation was carried. The effect of that proceeding, if legally effective, is to detach from relator and include within the new limits of Chisholm thirty-five forty-acre tracts. Forty-three forty-acre tracts were in similar fashion taken from the town of Balkan and included in the new Chisholm limits.

If the allegations of the verified information are true, all the territory so detached from the towns and added to the city was not properly included within the enlarged Chisholm limits. In the interests of brevity, we refrain from detailed statement of the allegations.

September 10, 1934, ten days after the Chisholm special election and before the election of officers for the new city, relator's town board, through its attorneys, presented to the Honorable Harry H.

Peterson, attorney general, a petition and information asking him to apply for a writ of *quo warranto* to test the validity of the incorporation of the city of Chisholm. There is no claim that the petition was defective either in form or substance. It was formally denied by the attorney general November 14, 1935, after notice of the instant motion was served. Although duly served with notice, the attorney general has not appeared in this proceeding. The motion is opposed by the city of Chisholm and the other respondents, its officers.

■ The first and highly important question raised on behalf of respondents is this: Does the refusal of the attorney general to file the information or even to consent to its filing effectively bar the doors of the courts to a municipal corporation, asserting that another such corporation is unlawfully absorbing a substantial portion of its domain and demanding judicial redress for the alleged wrong? We hold that it does not.

We are fully aware that there is much decision law the other way. It has had our careful consideration. It would serve no useful purpose to review the cases because the more modern rule which we follow is already well settled by our own decisions. The whole subject is considered and the authorities reviewed in the annotations in 125 A. S. R. 633, 6 Ann. Cas. 463, and 13 Ann. Cas. 1063.

In State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 955, 1 L.R.A.(N.S.) 826, 6 Ann. Cas. 905, the history of the original, but long obsolete, writ of *quo warranto* and its modern successor, the information in the nature of *quo warranto,* was exhaustively gone into. The conclusion reached was [96 Minn. 271]:

"The principle is thus firmly established in this state that the granting or withholding of leave to file an information at the instance of a private relator [anyone other than the attorney general], or of a private relator with the consent of the attorney general, to test the right to an office or franchise, rests in the sound discretion of the court to which the application is made, even though there is a substantial defect in the title by which the office or franchise is held."

288

In State ex rel. Wah-we-yea-cumin v. Olson, 107 Minn. 136, 138, 139, 119 N. W. 799, 800, 21 L.R.A.(N.S.) 685, a private relator, under indictment in the then new county of Mahnomen having made futile application to the attorney general, himself asked leave to file the information. It was denied on the ground that the relator did not have the "distinct or special right" prerequisite "within the meaning of the law" to the initiation of the proceeding independently of the attorney general. But the court, attempting definitely to settle the question, held, "in harmony with what seems the trend of judicial opinion, that leave to conduct *quo warranto* proceedings to test the legality of the organization of municipal or quasi municipal corporations will not be granted at the instance of private relators having no interest in the subject-matter distinct from the public." By an implication perfectly plain, if that be the rule, and it is, we may grant such an application even upon the petition of a private relator with a distinct or special right for an invasion of which he is in need of a remedy, and *quo warranto* is the only remedy.

In two other cases, one before (State ex rel. Dowdall v. Dahl, 69 Minn. 108, 71 N. W. 910) and one after (State ex rel. Ruesswig v. McDonald, 101 Minn. 349, 112 N. W. 278) the Kent case, we had held, in the language of the former case, that [69 Minn. 113] "the granting or withholding of leave to file an information at the instance of a private person rests in the sound discretion of the court, and is not a matter of strict legal right. When the attorney general has refused to give his consent, the case should be exceptional, and one in which it clearly appears that the public interests require it, to justify the court in overruling his judgment."

In taking leave of our own cases it should be noted that our only statute relevant to the question is 1 Mason Minn. St. 1927, § 132. It declares that the supreme court "shall have power to issue * * * to all corporations and individuals, writs of error, certiorari, mandamus, prohibition, quo warranto and all other writs and processes whether especially provided for by statute or not, that are necessary to the execution of the laws and the furtherance of justice." Obviously that statute is not merely declaratory of the common law

because of the broad authority it gives to issue any writ or process necessary "to the execution of the laws and the furtherance of justice." Obviously it does not condition the power declared in respect to "proceedings in the nature of quo warranto" upon the consent of the attorney general.

We pass the question whether the present relator, an organized town, may properly be called a private relator. It is such if "any relator other than the attorney general" is a private relator, and such may be the correct legal view. Assuming it to be so, yet relator plainly has a very substantial and special interest when of its territory there is sought to be taken away such a substantial portion, in area and value, as that which has been included within the new Chisholm limits. (Its assessed valuation is alleged to be $1,348,687.) That a town has a very direct, special, and vital interest in retaining so much of area and assessed value is not and will not be denied by anybody. Relator is clearly within the rule declared in State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A.(N.S.) 826, 6 Ann. Cas. 905, and State ex rel. Wah-we-yea-cumin v. Olson, 107 Minn. 136, 119 N. W. 799, 21 L.R.A.(N.S.) 685.

But the question is so important and goes so directly to fundamentals of law and government that we prefer not to leave it without further indication of the reasoning which is the basis of the established rule which we apply.

The writ of *quo warranto* has been obsolete for centuries. It was in origin "a writ of right for the king" to be withheld or allowed at his pleasure as expressed through his law officer, the attorney general. The ancient writ had the life squeezed out of it by a process of legal evolution. Its successor, the information in the nature of *quo warranto,* has undergone a broadening process of evolution, becoming more elastic in process with a view to accomplishing a purpose characteristic of American and English constitutional law, that for every wrong there should be a remedy.

In substance, then, the argument that the attorney general has the arbitrary power, by his refusal to proceed, or even to consent to the proceeding, to bar a relator from access to the courts is to

assert that, in some unexplained fashion, he has retained the absolute and royal prerogative of the ancient English kings. To state the proposition is to refute it. Imposing as is the dignity and great as is the power of the attorney general's office, its incumbent is not among the constitutional grantees of judicial power. To decide whether a remedial writ shall issue is of the very essence of judicial power. As a matter of procedural duty, courts will not refuse leave to the attorney general to file any information wherein he is *ex officio* the relator. But they cannot, without *pro tanto* abdicating both judicial power and duty in his favor, allow him to decide finally that an information shall not even be entertained by the appropriate court.

We are not unmindful that some of our earlier cases (*e. g.,* State ex rel. Wetzel v. Tracy, 48 Minn. 497, 500, 51 N. W. 613) favor the view that "where the object is to test the right of a corporation to exercise the corporate franchise, a privilege derived from the sovereign, the information must be filed by the attorney general on behalf of the state. The proceeding is necessarily one of a public nature, and must be prosecuted by and in behalf of the public." If by that statement it was intended to bar from all access to the courts relators other than the attorney general, we think the rule has been modified and modernized as already indicated in the Kent and Olson cases. It follows that, while we have the highest regard not only for the office of the attorney general as such but also for any incumbent of it, we cannot allow his executive action to prevent the exercise of our judicial function in an appropriate case, and we consider this such a case.

In Lamoreaux v. Ellis, 89 Mich. 146, 50 N. W. 812 (see also State v. Sadler, 25 Nev. 131, 58 P. 284, 59 P. 546, 63 P. 128, 83 A. S. R. 573) it was held that even where the issue was as to title to public office an elector and taxpayer might institute proceedings to compel the attorney general to file an information in the nature of a *quo warranto*. The attorney general appeared in opposition. He prevailed but not upon the proposition that his own action was final. With us title to public office is now tried in a statutory election contest. Hence *quo warranto* will not lie. But, notwithstanding,

the Michigan decision is not irrelevant to the present inquiry. The court said [89 Mich. 150]:

"The law, of course, presumes that every public officer will do his duty * * * but the current history of our day is full of instances of such intense party feeling that persons are frequently applying to the courts * * * for the protection and enforcement of rights denied to them for partisan and political reasons only. * * * The public are vitally concerned in every election. * * * Every honest citizen is interested and concerned * * * and has a legal right to be so. The courts ought not to consent to any holding which will put the power arbitrarily and without remedy or redress into the hands of any one, two, or three men to prevent a candidate for office from establishing his election to any office, or any citizen from inquiry in good faith into the rights of any person to hold an office."

The function of the attorney general is such, and the dignity and importance of his office of such moment, that his refusal to file an information in the nature of *quo warranto* is not lightly to be overridden. State ex rel. Hilton v. So-called "Village of Minnewashta," 165 Minn. 369, 206 N. W. 455. In this case the attorney general has not appeared. We have not had the valuable aid of his participation in argument. A copy of his decision declining to file an information as relator, or to consent that the present relator proceed in his name but without his assistance, has been furnished us. Without argument in its support from or on behalf of its author, we refrain from going into its details. How the attorney general exercises his discretion is no affair of ours except as it goes upon grounds properly for our consideration also. His discretion is plenary. State ex rel. Peterson v. City of Fraser, 191 Minn. 427, 254 N. W. 776. But it is our judicial discretion that is now invoked. Can the attorney general prevent us from exercising it or say, effectually, that we have none to exercise? We think not for reasons already stated. He may say that he will have nothing to do with this proceeding, and that is that. But he cannot say, finally, that a writ shall not issue and in the name of the state. The final decision of that ultimate question is for us.

▉ It is enough for us that relator, itself a duly organized municipal corporation, has made a *prima facie* showing of public right so important, and of wrong thereto so injurious, that, there being no other remedy, it would be an abuse of our discretion to deny leave to file the information.

It is with the deepest regret that we proceed notwithstanding the adverse ruling of the attorney general. But to refuse to do so would close the doors of this court to a relator who, whatever its ultimate right, presents an exceptional case which it is entitled to have litigated according to the law of the land, to the end that its right may be determined and, if there be a wrong, that it have adequate remedy. Relator is not a "private citizen having no interest distinct from that of the public," within the rule of Evens v. Anderson, 132 Minn. 59, 63, 155 N. W. 1040, 1042. The issue is not, in the ordinary sense, between private litigants. It is between two public corporations, the larger municipality of Chisholm and the smaller municipality of Stuntz. The rights of the latter as a municipal subdivision of this state stand just as high in the judicial view as do those of its larger and more powerful neighbor. The little town is just as much entitled to litigate its position and resulting rights as is its larger neighbor.

After all, there can be neither worthwhile right nor effectual remedy unless the law itself is vindicated. It would be to flout the law rather than to vindicate it to deny to one municipal corporation, presenting such a case as does relator here, even an opportunity to have judicially investigated an invasion of its territory by another such corporation.

The argument, even if founded on fact, that some mining company, or its agents, or attorneys are interested in relator's success, and perchance doing something to aid it, is one that should not even have been suggested. It does not flatter judicial auditors to be so approached. Nor will they willingly listen until they must discriminate between litigants on the ground of color, race, property, politics, occupation, relationship, or some other such irrelevant factor, which is now, and for some considerable time has been, ruled out by the sense of our law.

Relator is granted leave to file its information for a writ, which will issue as therein prayed for; except that the issues will be limited to the propriety of including within the city of Chisholm that portion of the territory of relator brought in question by the information. The latter charges also the improper inclusion of some area of the town of Balkan. That question will not be gone into unless the latter town or some of its taxpayers apply for and procure leave to intervene.

The Honorable A. B. Gislason, one of the district judges of the ninth judicial district of this state, is hereby appointed referee to take the testimony, make findings of facts, and report the same to this court with all convenient speed.

DEVANEY, CHIEF JUSTICE (dissenting).

I cannot concur in the views of the majority and therefore respectfully dissent.

It is so well established in this state by a long line of decisions that proceedings to test the legality of the organization of a municipal corporation can be initiated only in the name of the state at the instance of its attorney general that discussion of the question would serve no useful purpose. From a reading of these cases it is apparent that the attorney general's decision as to whether such suit should be instituted is final and not subject to review by this court. State ex rel. Clapp v. Minnesota Thresher Mfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510; State ex rel. Wetzel v. Tracy, 48 Minn. 497, 51 N. W. 613; State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A.(N.S.) 826, 6 Ann. Cas. 905; State ex rel. Ruesswig v. McDonald, 101 Minn. 349, 112 N. W. 278; State ex rel. Wah-we-yea-cumin v. Olson, 107 Minn. 136, 119 N. W. 799, 21 L.R.A.(N.S.) 685; Hammer v. Narverud, 142 Minn. 199, 171 N. W. 770; State ex rel. Peterson v. City of Fraser, 191 Minn. 427, 254 N. W. 776.

I see no sound reason for departing from this well settled rule in this case, especially in view of the fact that these proceedings were instituted in this court prior to the time the attorney general rendered his decision.

Leave to file information in the nature of *quo warranto* should be denied.

## ON MOTIONS TO QUASH WRIT AND ON APPLICATIONS FOR LEAVE TO INTERVENE.

On April 17, 1936, the following opinion was filed:

PER CURIAM.

January 24, 1936, the opinion of this court in the case of State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 264 N. W. 798, was filed. The town of Stuntz was granted leave to file its information for a writ of *quo warranto* to test the propriety of including within the boundaries of the respondent city of Chisholm certain portions of territory formerly contained within the limits of the relator.

The matter is now before us on a motion by the attorney general to dismiss the writ so issued and also a motion on part of the respondent city to quash the writ. The two motions were argued together and involve the same or at least similar points. The attorney general has attacked the decision of this court in the issuing of the writ of *quo warranto* on the prayer of the town of Stuntz. Much of the same matter that was raised in the original proceeding again has been presented.

After very careful consideration and thorough study of the entire matter, we hold to the conclusion expressed in our former opinion and can see no reason for departing therefrom. We consider that a denial of the petition would have been an abuse of discretion. Our power to grant it, even over the objections of the attorney general, was settled as long ago as 1905 in State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A.(N.S.) 826, 6 Ann. Cas. 905. While in the relative sense the rule of our decision is modern, yet in point of age it lacks all of 30 years of being new. The motion to quash and the one to dismiss are both denied.

There have been several applications to intervene. In its newly incorporated territory the city of Chisholm included a portion of the area previously contained within the boundaries of the town of Balkan. That town has filed a petition for leave to intervene. It

appearing that the town occupies practically the same position as does the town of Stuntz, the application is granted.

Several taxpayers and residents of the town of Balkan and some mining companies, which own property in the affected area, also filed petitions for leave to intervene. It appears that these petitioners may have "special rights" that will be affected by the final determination of the case. We are of opinion that no harm can result by permitting them to intervene, and their petitions to do so are granted. That does not mean that we would have permitted them to come in as the original and only relators. Compare State ex rel. Wah-we-yea-cumin v. Olson, 107 Minn. 136, 119 N. W. 799, 21 L.R.A.(N.S.) 685.

DEVANEY, CHIEF JUSTICE (dissenting).

I do not agree. My reasons therefor have been set forth in the opinion heretofore referred to. State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 264 N. W. 798.

