# STATE EX REL. HILDA DANIELSON AND OTHERS v. VILLAGE OF MOUND AND OTHERS.[1]

July 20, 1951.

No. 35,197.

---

[1]Reported in 48 N. W. (2d) 855.

Perry R. Moore, Robert W. Dygert, and Stinchfield, Mackall, Crounse & Moore, for relators.

Herbert E. Wolner, William F. Kelly, and Lewis L. Anderson, for respondents.

*Francis E. Colgrove,* Township Attorney, filed a brief as *amicus curiae* on behalf of the Town of Orono.

MATSON, JUSTICE.

Upon the relation of private parties, with the consent of the attorney general, this court issued a writ of quo warranto to test the validity of the annexation of certain territory by the village of Mound in Hennepin county.

We are concerned with three areas in the immediate vicinity of Lake Minnetonka: (1) The village of Mound; (2) the unincorporated community known as Spring Park, which lies east of the village of Mound (hereinafter called Spring Park); and (3) the annexation territory herein consisting of approximately 37 acres of the industrial district of Spring Park, plus 7.65 acres in the form of a 100-foot-wide railroad right of way which extends about five-eighths of a mile westward from such Spring Park industrial tract until it connects with the village of Mound. In other words, the 37-acre industrial portion of the area purported to have been annexed has no connection with the territory proper of the village of Mound other than by the railroad right of way which has been included in the annexation area. There is no residential dwelling on any part of the annexed territory.

Relators, who reside in Spring Park but outside the annexation territory above described, on September 6, 1949, signed a petition for the incorporation of the village of Spring Park to consist of approximately 82½ acres—inclusive of the 37-acre industrial district involved in these proceedings. This petition, after the county commissioners had approved it and ordered an election to determine the matter, was, on September 27, 1949, in an action commenced by two of the corporate respondents herein, dismissed by the district court as legally defective and void, but without prejudice to the right to file another petition.

On October 1, 1949, before relators had filed another petition for the incorporation of Spring Park, the four corporate respondents herein, namely, Minnetonka Properties, Inc., the J. R. Clark Com-

pany, Streater Industries, Inc.—owners of industrial plants in the 37-acre industrial district of Spring Park—and the Great Northern Railway Company—as owner and user of the ⅝-mile railroad right of way—petitioned the village of Mound for annexation of such industrial district and right of way. By their petition they alleged (1) that they were the sole owners of all property in said territory; (2) that the territory was so conditioned as properly to be subjected to the village government of Mound; and (3) that said territory abutted on the village. On the same day, the village council of Mound enacted an ordinance declaring the territory to be annexed to the village. On October 3, 1949, a certified copy of the ordinance was filed with the county auditor. For the purpose of correcting certain inaccuracies in the description of the annexed territory, the Mound village council on October 6, 1949, adopted another ordinance amending and reënacting the prior annexation ordinance of October 1, 1949. The amended ordinance was filed with the county auditor on October 21, 1949.

Prior to the adoption of such amendatory ordinance by the village council of Mound, relators on October 3, 1949, submitted to the board of county commissioners of Hennepin county, a new petition for the incorporation of Spring Park (inclusive of the 37-acre industrial area). No action on this petition was taken by the county board by reason of the conflicting annexation proceedings of the village of Mound.

On January 28, 1950, this court, upon an information filed by relators with the consent of the attorney general, issued a writ of quo warranto directing the village of Mound, its officers, and the corporate respondents herein to show by what warrant said village and its officers assumed to hold and exercise jurisdiction over the territory purportedly annexed on or about October 1, 1949, and on October 6, 1949. Thereafter a referee was appointed pursuant to M. S. A. 546.33 to take testimony and to make findings of fact and conclusions of law with reference to all issues.

The referee made and filed his findings of fact and conclusions of law that the petition of October 1, 1949, for annexation of the indus-

trial area and "right-of-way" strip, the ordinance adopted October 1, 1949, and the ordinance adopted October 6, 1949, were illegal and void, and that therefore relators were entitled to a writ of ouster against the village of Mound and the members of its council and its officers to prevent them from exercising any authority or jurisdiction over the territory described in the above ordinance.

We are concerned with these issues:

(1) Does a private citizen, with the consent of the attorney general, have the right to use the writ of quo warranto to test the legality of annexation proceedings?

(2) Is a private corporation, as a signatory of a petition for annexation, a proper party respondent in quo warranto proceedings brought to challenge the validity of an annexation?

(3) Does a writ of quo warranto lie prior to the time a village has acted upon a petition for annexation?

(4) Where the territory to be annexed and the annexing village do not abut upon each other in any other manner than that they are located at opposite ends of an actually used and occupied railroad right of way—which is 100 feet wide and about five-eighths of a mile long and which is included as a part of the annexed territory—is such territory, pursuant to § 412.041, subd. 1, *so conditioned as properly to be subjected to village government?*

 There has been considerable confusion as to how and when a private citizen will be permitted to institute quo warranto proceedings in this court. Since the American law adopted the common-law writs as modified by pre-Revolutionary statutes, we must fully understand the effect of these statutes to solve current problems involving the writ of quo warranto.[2] The common-law quo warranto "served as one of the main weapons of the Crown to prevent a dispersal of its powers of government through the claim of

---

[2] See, *e. g.*, discussion of the history of the writ of quo warranto in State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A. (N.S.) 826.

franchises by barons or boroughs"[3] and could not issue, or the information be filed, at the relation of a private individual.[4] Being cumbersome and at times unsatisfactory to the Crown, this original writ fell into disuse at an early date[5] and was superseded by a remedy called "information in the nature of a *Quo Warranto*," which served the same purpose as the original writ[6] but provided means for a speedy disposition of the controversy.[7] In 1711, the "information in the nature of a *Quo Warranto*" was extended by statute[8] so that private persons, with the leave of the court, were allowed to file an information for the purpose of prosecuting the same against persons usurping, intruding into, or unlawfully holding and executing any office or franchise in corporations and boroughs.[9] Thus, the common law as we adopted it provided for the information in the nature of quo warranto as a civil remedy which was allowed to be filed by (1) the attorney general ex officio on behalf of the Crown, and (2) by the master of the Crown Office at the instance of a private individual[10]; but in certain cases an information could only be filed by the attorney general ex officio.[11]

[3]Riesenfeld, Bauman, and Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 33 Minn. L. Rev. 569, 571.

[4]3 Blackstone, Commentaries, 264; see, Rice v. National Bank, 126 Mass. 300, 303.

[5]Riesenfeld, Bauman, and Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 33 Minn. L. Rev. 569, 571.

[6]For a discussion of this development, see 3 Blackstone, Commentaries, 263; Jenks, *The Prerogative Writs in English Law*, 32 Yale L. J. 523, 528.

[7]*Aspects of the Action Quo Warranto in Iowa*, 31 Iowa L. Rev. 255.

[8]9 Anne, c. 20 (12 Stat. at Large, p. 190).

[9]10 Ency. Laws of England, p. 631.

[10]State ex rel. Young v. Village of Kent, 96 Minn. 255, 261, 104 N. W. 948, 950, 1 L.R.A.(N.S.) 826.

[11]10 Ency. Laws of England, p. 632.

Today, the supreme court has jurisdiction to issue writs of quo warranto under § 480.04.[12] Quo warranto as authorized by this statute is not in essence the old common-law writ, even though the statute allows the issuance of writs of quo warranto, but rather the information in the nature of quo warranto as changed by 9 Anne, c. 20 (12 Stat. at Large, p. 190).[13] To understand this statutory proceeding, it is necessary to analyze our existing case law in connection with the historical development of the information in the nature of quo warranto.

The procedure for obtaining a statutory writ of quo warranto is not identical in all respects with the common-law procedure for filing an information in the nature of a quo warranto. In an action under § 480.04 for a writ of quo warranto, as under the common law, no summons or complaint is necessary. Where the application for the writ is made by the attorney general ex officio, the public interest requires that the writ issue.[14] Where, however, the issuance of the writ is sought by a private individual with the consent of the attorney general—only in a few very restricted circumstances is the attorney general's consent not necessary[15]—the private individual must petition the court for leave to file an information *for* a writ of quo warranto.[16] The granting or withholding of leave to file an information *for* a writ of quo warranto at the instance of a private individual, with or without the consent of the attorney

[12]See article by Riesenfeld, Bauman, and Maxwell, *supra*, 33 Minn. L. Rev. 572-575, for the statutory development of the regulation of the writs in Minnesota.

[13]State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A.(N.S.) 826; State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 264 N. W. 798, 266 N. W. 689.

[14]State ex rel. Bell v. Moriarty, 82 Minn. 68, 84 N. W. 495.

[15]State ex rel. Wells v. Atwood, 202 Minn. 50, 277 N. W. 357; State ex rel. Dowdall v. Dahl, 69 Minn. 108, 71 N. W. 910; see, also, State ex rel. Christianson v. Johnson, 201 Minn. 219, 275 N. W. 684.

[16]State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A.(N.S.) 826. No affidavit is required as under the common law. 10 Ency. Laws of England, p. 639; 7 Comyn's Digest (C 3), p. 195.

general, rests in the sound discretion of the court.[17] When, however, the supreme court permits an information *for* a writ of quo warranto to be filed *and has issued the writ,* the court is deemed to have exercised its discretionary power favorably for the relator,[18] and it is immaterial that relator failed to petition the court for leave to file the information upon which the writ was issued.[19] After the writ is issued, defendant may plead to such writ within the time specified therein, and the proceeding continues in the same manner as in an ordinary civil action.[20] The judgment for relator may be a general judgment of ouster, an ouster of the right to do the particular act complained of, a suspensive judgment of ouster with a fine accompanying it, or a simple fine.[21]

■ Does a private citizen, however, with the consent of the attorney general, have the right to use the writ of quo warranto to test the validity of *annexation proceedings?* Where the party aggrieved may obtain full and adequate relief in either a common-law or equitable action, a writ of quo warranto is not available.[22] Some authorities hold that the proper remedy for persons specifically interested in or affected by annexation proceedings is an injunction.[23] Speaking in regard to these authorities, our court in State ex rel.

---

[17]State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A.(N.S.) 826 (even though there is a substantial defect in the title by which the office or franchise is held) ; 5 Dunnell, Dig. & Supp. § 8070.

[18]State ex rel. Arpagaus v. Todd, 225 Minn. 91, 29 N. W. (2d) 810, 175 A. L. R. 776.

[19]See records for State ex rel. Arpagaus v. Todd, 225 Minn. 91, 29 N. W. (2d) 810, 175 A. L. R. 776; State ex rel. Northern Pump Co. v. So-called Village of Fridley, 233 Minn. 442, 47 N. W. (2d) 204.

[20]State ex rel. City of St. Paul v. Oehler, 218 Minn. 287, 15 N. W. (2d) 783.

[21]5 Dunnell, Dig. § 8073a. For a discussion of the common-law procedure for filing an information in the nature of a quo warranto, see 10 Ency. Laws of England, pp. 638-639.

[22]Dennistoun v. Davis, 179 Minn. 373, 229 N. W. 353; High, Extraordinary Legal Remedies (3 ed.) § 617.

[23]People ex rel. Farrington v. Whitcomb, 55 Ill. 172; Stultz v. State ex rel. Steele, 65 Ind. 492; High, Extraordinary Legal Remedies (3 ed.) § 618.

Childs v. Board of Co. Commrs. 66 Minn. 519, 68 N. W. 767, 69 N. W. 925, 73 N. W. 631, 35 L. R. A. 745, said (66 Minn. 528, 69 N. W. 925):

"The theory of these cases seems to be that the mere de facto annexation of territory to a municipal corporation or quasi corporation is always absolutely void as to every one, and can always be attacked collaterally in any action or proceeding in which the question of the status of the territory may be material. We cannot subscribe to that doctrine. It may be that, immediately or shortly after the attempted annexation of the territory, a person specially affected thereby would be allowed to attack such alleged annexation collaterally, and enjoin the officers of the municipality to which it was claimed to have been annexed from exercising jurisdiction over it. As to that we express no opinion. But after such attempted annexation has been confirmed by user, taxes have been levied, expenses incurred, and other rights and liabilities have been created, we are clearly of the opinion that a de facto annexation may exist, which can only be questioned by the proper state authority in a direct proceeding for that purpose."

The distinction is not valid. Immediately after an annexation proceeding has been completed, a *de facto* annexation exists; rights and liabilities have necessarily been created. To permit private individuals to question collaterally the validity of annexation proceedings at any time thereafter would cause serious consequences to public and private interests.[24]

The information in the nature of quo warranto has undergone a "broadening process of evolution, becoming more elastic in process with a view to accomplishing a purpose characteristic of American and English constitutional law, that for every wrong there should be a remedy."[25] In our jurisdiction, the writ of quo warranto at

[24]Cf. State ex rel. Childs v. Board of Co. Commrs. 66 Minn. 519, 69 N. W. 925; State v. Honerud, 66 Minn. 32, 68 N. W. 323 (annexation of townships).

[25]State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 289, 264 N. W. 798, 800, 266 N. W. 689.

the instance of the attorney general ex officio has been allowed against a municipal corporation to test the legality of its incorporation[26] and also to test the legality of its annexation proceedings.[27] Our court has extended the scope of the writ of quo warranto by issuing such writs upon the relation of a municipal corporation *without* the consent of the attorney general[28] and upon the relation of private corporations *with* the consent of the attorney general[29] for the purpose of contesting municipal incorporation proceedings. Our court has never before, until this case, issued a writ of quo warranto at the relation of a private individual *with* the consent of the attorney general to challenge the validity of an annexation proceeding by a municipal corporation. If, however, a writ of quo warranto is the proper remedy upon the relation of a municipal corporation *without* the consent of the attorney general or upon the relation of a private corporation *with* the consent of the attorney general for ousting or dissolving a municipal corporation *in toto*, there is no reason in principle why it should not lie upon the relation of a private individual *with* the consent of the attorney general to challenge directly the validity of *annexation proceedings,* even though such proceedings are necessarily of a public nature.[30] A private person, therefore, with the consent of the attorney general and with leave of our court may file an information

[26]State ex rel. Childs v. Village of Fridley Park, 61 Minn. 146, 63 N. W. 613; State ex rel. v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755.

[27]State ex rel. Childs v. Board of Co. Commrs. 66 Minn. 519, 69 N. W. 925; State ex rel. Hilton v. Village of Kinney, 146 Minn. 311, 178 N. W. 815.

[28]State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 264 N. W. 798, 266 N. W. 689.

[29]State ex rel. Northern Pump Co. v. So-called Village of Fridley, 233 Minn. 442, 47 N. W. (2d) 204.

[30]Under the common law, an information in the nature of quo warranto at the instance of a private party would not be granted against a corporation as a body. 10 Ency. Laws of England, p. 632. Nor could it be filed by a private relator to determine whether a corporate body had usurped its statutory powers. The only remedy was by intervention of the attorney general. 10 Ency. Laws of England, p. 632.

*for* a writ of quo warranto to contest an *annexation* proceeding by a municipal corporation, and, if successful, is entitled to the issuance of a writ of ouster with respect to the territory sought to be annexed.

Is a private corporation, as a signatory of the petition for annexation, a proper party respondent in this proceeding? Since there are no statutory provisions or rules of practice to the contrary, objections to parties in quo warranto proceedings should be taken at the time and in the same manner as prescribed for such objections in civil proceedings generally.[31] Relators contend that respondents' motion to quash the writ as to the private corporations is based on an alleged *defect of the parties* (§ 544.03, subd. 1[4]), which respondents have waived pursuant to § 544.03, subd. 3. Relators' argument is without merit, in that a defect of parties means "only the failure to join those who should have been included"[32] and not the joinder of improper parties.

Our writ of quo warranto—the modern information in the nature of a quo warranto—may be defined as a proceeding to correct the usurpation, misuser, or nonuser of a public office or corporate franchise[33]; and the objects to be attained by our modern remedy are identical with those which were secured by the ancient writ.[34] The writ, as used here, commanded respondents to show by what right, "quo warranto," they exercised jurisdiction over the annexed territory and over the petition for additional annexation. The private corporations, as petitioners, could not, and did not, exercise jurisdiction over the annexation proceedings. Pursuant to § 412.041, subd. 4, only the village council has the authority to issue an ordinance annexing land upon petition by owners for inclusion, and then only, if it determines "that the annexation will be to the best interests of the village and of the territory affected." Quo

[31]State ex rel. City of St. Paul v. Oehler, 218 Minn. 287, 15 N. W. (2d) 783; 44 Am. Jur., Quo Warranto, § 85.

[32]2 Pirsig's Dunnell, Minn. Pl. § 1636.

[33]High, Extraordinary Legal Remedies (3 ed.) § 591.

[34]High, Extraordinary Legal Remedies (3 ed.) § 591.

warranto proceedings instituted to challenge an annexation by a village must be brought against the municipal corporation and its officers and council members—and not against the signers of the petition for annexation.

■ Here, respondents moved at the outset of the hearing before the referee to strike as respondents the following: Minnetonka Properties, Inc., Streater Industries, Inc., J. R. Clark Company, and Great Northern Railway Company. The referee herein did not have the power to quash the writ as to any of the respondents. The misjoinder of defendants in a quo warranto proceeding, however, is an irregularity which may be corrected at any time before or after judgment of ouster is entered by striking out the name of the party improperly joined.[35] At this time, the writ is quashed as to the following respondents: Minnetonka Properties, Inc., Streater Industries, Inc., J. R. Clark Company, and Great Northern Railway Company.

■ Respondents contend that until a village council has acted upon a petition for annexation a writ of quo warranto does not lie. The writ of quo warranto is a remedy used to correct—among other things not relevant here—usurpation, misuser, or nonuser of a franchise of a municipal corporation.[36] In Webster's New International Dictionary (2 ed.) (1947), "usurpation" is defined as "unauthorized arbitrary assumption and exercise of power"; "misuser" in law is defined as "use unlawfully in excess of, or varying from, one's right"; and "nonuser" in law is defined as "failure to use or exercise any right or privilege."

By the writ of quo waranto herein, respondents were in part commanded to show by what warrant the village of Mound and its

[35]See, Lewis & Pickering v. C. W. Williams & Sons, 3 Minn. 95 (151) (defendant improperly joined may demur on the ground that the complaint does not state a cause of action). M. S. A. 544.03, subd. 3, expressly excepts from the waiver objections to the sufficiency of facts to constitute a cause of action. *But cf.* Posch v. Lion Bonding & Surety Co. 137 Minn. 169, 163 N. W. 131 (court confused defect of parties with misjoinder of parties). See, 5 Dunnell, Dig. § 7327.

[36]High, Extraordinary Legal Remedies (3 ed.) § 591.

council members and officers assumed to exercise jurisdiction over a petition for annexation which had been filed with, *but not acted upon by*, the village council. Relators claimed that the petition was invalid and ineffective. At this time, the village through its council members had not arbitrarily exercised an unauthorized act, had not acted beyond the scope of its franchise, or had not failed to exercise a right granted by its franchise. Pursuant to § 412.041, subd. 4, the power of annexation is vested in the corporate body of the village. Until an actual usurpation has occurred, the remedy of quo warranto has no application, and may not therefore be used to question the validity of a pending petition for annexation which has not been acted upon by the village council.[37] To the extent that respondents were ordered to show by what warrant they exercised jurisdiction over the petition for annexation filed on or about November 1, 1949, the writ is quashed.

■ We turn from the procedural issues to a disposition of the case on its merits. Is the territory involved in these annexation proceedings so conditioned as properly to be subjected to village government within the meaning of § 412.041, subd. 1, which provides:

"Territory *abutting* on any village and not included in any other village or in any city or borough may be added to the village in the manner prescribed in the following subdivisions if *so conditioned as properly to be subjected to village government*." (Italics supplied.)

We have not heretofore construed the above section. In State ex rel. Smith v. Village of Gilbert, 127 Minn. 452, 149 N. W. 951, we did, however, construe an earlier annexation statute, L. 1909, c. 113, which was silent on the subject of how the territory proposed to be annexed must be conditioned. Therein we held that by implication the statute required that the same qualifications apply to territory sought to be annexed as to territory included in an original incorporation, namely, that it must be "so conditioned as properly to be subjected to village government." Subsequent decisions have fol-

---

[37]Cf. High, Extraordinary Legal Remedies (3 ed.) § 619.

lowed the Gilbert case. State ex rel. Hilton v. Village of Kinney, 146 Minn. 311, 178 N. W. 815; State ex rel. Hilton v. Village of Buhl, 150 Minn. 203, 184 N. W. 850. It follows that § 412.041, subd. 1, does nothing more than give express statutory recognition to a rule of long standing, namely, that territory to be annexed, like territory included in original incorporation, must be so conditioned as properly to be subjected to village government. Original incorporation as well as annexation cases are therefore in point. In the light of § 412.041, subd. 1, and our controlling decisions, a territory to be added to an existing village by annexation is conditioned as properly to be subjected to village government only if it lies in such close proximity to the village as to both abut thereon and as to be suburban in its character, and to be so limited in area and to have such a natural connection, as well as a unity or community of interests, with the village that the entire area, taken as a whole, will naturally and reasonably be adaptable to the maintenance of village government[38] whereby, in addition to other municipal functions, there may be a common and feasible provision for, and enjoyment of, the benefits of the usual municipal conveniences such as water, sanitation, gas, electricity, police and fire protection, and similar services.[39]

The annexation of additional territory to a village, pursuant to § 412.041, involves the exercise of a legislative function delegated to the village by the legislature. As long as such legislative function of annexation is exercised by the village within the scope of its delegated powers, and in a reasonable manner, as distinguished

[38] See, State ex rel. v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755; State ex rel. Simpson v. Village of Alice, 112 Minn. 330, 127 N. W. 1118; State ex rel. Hilton v. Village of Buhl, 150 Minn. 203, 184 N. W. 850; State ex rel. Hilton v. City of Nashwauk, 151 Minn. 534, 186 N. W. 694, 189 N. W. 592; State ex rel. Burnquist v. Village of Leetonia, 210 Minn. 404, 298 N. W. 717; State ex rel. Northern Pump Co. v. So-called Village of Fridley, 233 Minn. 442, 47 N. W. (2d) 204.

[39] See, State ex rel. Hilton v. Village of Kinney, 146 Minn. 311, 178 N. W. 815; State ex rel. Town of Stuntz v. City of Chisholm, 199 Minn. 403, 273 N. W. 235.

from one that is arbitrary or unreasonable, this court will not interfere, even though the wisdom of the annexation may be subject to question as a matter of policy.[40]

As applied to the instant case, the function of annexation was not exercised in a reasonable manner or within the scope of the power delegated to the village. As a result, the territory which it attempted to annex is not so conditioned as to be properly subjected to village government. As already noted, the main body of the territory is located about five-eighths of a mile from the village and does not abut thereon except by an elongated stem or isthmus which at all times has been, and now is, used and occupied as a railroad right of way. No motor vehicle or pedestrian can lawfully,[41] safely, or as a practical matter use the railroad right of way in passing from the village to the annexed territory. In other words, the area sought to be added does not *by means of any usable territory* abut upon the village so as to permit travel to and fro without passing over lands wholly outside the village. Wild v. People ex rel. Stephens, 227 Ill. 556, 81 N. E. 707. Likewise, the railroad right of way cannot reasonably or feasibly be used in providing the new tract with the usual village services by means of water, sewage, gas, and electric connections. Policemen and firemen will be able to discharge their duties only by traveling in part outside their normal jurisdiction. Under the circumstances, the proposed annexation fails to provide a natural or practical connection between the village and the industrial tract whereby the area as

[40]State ex rel. Northern Pump Co. v. So-called Village of Fridley, 233 Minn. 442, 47 N. W. (2d) 204; State ex rel. v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755; State ex rel. Childs v. Village of Fridley Park, 61 Minn. 146, 63 N. W. 613; State ex rel. Douglas v. Village of Holloway, 90 Minn. 271, 96 N. W. 40; State ex rel. Young v. Village of Gilbert, 107 Minn. 364, 120 N. W. 528; State ex rel. Hilton v. So-called "Village of Minnewashta," 165 Minn. 369, 206 N. W. 455; State ex rel. Burnquist v. Village of Leetonia, 210 Minn. 404, 298 N. W. 717; State ex rel. Burnquist v. Village of North Pole, 213 Minn. 297, 6 N. W. (2d) 458.

[41]See, M. S. A. 621.31; Hanks v. G. N. Ry. Co. 131 Minn. 281, 154 N. W. 1088.

a whole may be adapted to the maintenance of a village government which can feasibly discharge its usual functions for the benefit of all residents. The two areas are so separated as to preclude any natural or effective unity of interests. See, Clark v. Holt, 218 Ark. 504, 237 S. W. (2d) 483. We need not here decide whether territory which abuts upon a village for a width of only 100 feet meets the requirements of § 412.041, subd. 1, where the land so abutting in other respects provides a practical and usable connection for the discharge of normal municipal functions. Clearly, in providing that the territory to be annexed must abut upon the village, the legislature intended that the abutting should not only be to such an extent, but also of such a *character*, that it will so condition the territory as properly to subject it to the village government.

In view of our holdings that the territory sought to be annexed is not properly conditioned for village government, it is unnecessary to pass upon the question of whether all property owners with respect to the railroad right of way area signed the petition for annexation.[42]

Let a writ of ouster issue to the village of Mound and to its officers and council members as to the territory described in its annexation ordinances of October 1, 1949, and October 6, 1949. The writ is discharged with respect to the other respondents.

So ordered.

[42]See, Village of Wayzata v. G. N. Ry. Co. 50 Minn. 438, 52 N. W. 913.